384 A.2d 1215

COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert TODD, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued March 11, 1977.

Decided April 28, 1978.

Charles N. Caputo, Michael W. Zurat, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

This is an appeal from convictions for voluntary manslaughter, 18 Pa. C.S.A. § 2503 (1973), and for violations of the Uniform Firearms Act, *id.* §§ 6105, 6106 (ex-convict not

to possess a firearm and carrying an unlicensed firearm, respectively).[1]  Appellant was sentenced to three to ten years imprisonment for the manslaughter conviction and one to five years imprisonment for the firearms convictions; the firearms sentence was to run consecutively with the manslaughter sentence.  In reviewing the evidence in a light most favorable to the verdict winner, here the Commonwealth, *Commonwealth v. Alexander*, 477 Pa. 190 at 192, 383 A.2d 887 at 888 [1978], the following facts are disclosed: On the evening of September 28, 1974, appellant and the victim, Charles Heresco, were drinking at the bar of a private club.  During the course of the evening, appellant and the victim became engaged in an argument over a sum of money that the victim had loaned appellant earlier that same evening.  When the argument became more heated, the bartender on duty, Robert Heresco, the victim's brother, intervened to quiet the dispute.  At that point appellant began arguing with the bartender also.  Shortly thereafter appellant told his wife to get his gun out of the car, which was parked outside of the club.  Appellant's wife left the club.  Soon after her departure, the bartender insisted that appellant and the victim leave the club;  the bartender escorted the two men out to the parking lot and then returned to his duties inside the club.

Appellant and the victim, both intoxicated, resumed their argument in the parking lot.  Then appellant's wife arrived driving an automobile.  At that time appellant went over to the driver's side and told his wife to get out.  When she refused, he struck her in the chest, pulled her out of the car, and got into the driver's seat himself.  Then the victim leaned into the driver's side saying, "don't, don't, don't!"  Seconds later there was a single gunshot;  the victim fell back onto the curb, and appellant sped away in the vehicle.  Shortly after the shooting, the victim was pronounced dead on arrival at a nearby hospital.

1.  This Court's jurisdiction over the appeals from the voluntary manslaughter conviction and firearms convictions is based upon sections 202(1) and 503(a), respectively, of the Appellate Court Jurisdiction Act.  17 P.S. §§ 211.202(1), 211.503(a) (Supp.1977–78).

Later examination disclosed that death was caused by a bullet wound to the head; the round recovered was from a .38 caliber weapon. There was no evidence that the victim was armed. None of the several eyewitnesses actually saw the weapon, and the authorities never recovered the weapon used by appellant.

In the instant appeal appellant challenges the sufficiency of the evidence to support the firearms verdicts.[2] In its opinion disposing of appellant's written post-trial motions, the trial court ruled that the evidence was sufficient to support the firearms verdict. For the following reasons, we disagree and therefore reverse the judgment of sentence entered on that verdict and discharge appellant as to the firearms counts.

The relevant provisions of the Uniform Firearms Act (Act) are as follows:

No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control. 18 Pa. C.S.A. § 6105 (1973).[3]

(a) Offense defined.—No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter. *Id.* § 6106(a).

**2.** Appellant has also raised the following challenges: (1) That the evidence is insufficient to support the voluntary manslaughter verdict; (2) that the prosecution withheld exculpatory evidence; (3) that the prosecution failed to provide defense counsel with certain written pre-trial statements made by the Commonwealth witnesses, when these statements were requested by defense counsel at trial; (4) that the trial court erred when it admitted into evidence the preliminary hearing testimony of a Commonwealth witness who at trial invoked his privilege against self-incrimination; (5) that the trial court erred when it sustained a prosecution objection to defense counsel's questions to a medical expert concerning appellant's intoxication at the time of the crime.

We have considered appellant's arguments and find them to be without merit.

**3.** On February 11, 1960, appellant pleaded guilty to burglary and was convicted on that charge. In the instant case, the Commonwealth proved at trial the fact of this prior conviction.

The definitional section of the Act defines "firearm" as follows:

Any pistol or revolver with a barrel less than 12 inches, any shotgun with a barrel less than 24 inches, or any rifle with a barrel less than 15 inches. *Id.* § 6102.

Penal statutes must be strictly construed. 1 Pa. C.S.A. § 1928(b)(1) (Supp.1977–78). Thus we must conclude that barrel length is an essential element of the offenses defined in sections 6105 and 6106, and it is fundamental that the Commonwealth must prove every essential element of a crime beyond a reasonable doubt. *Commonwealth v. Cropper,* 463 Pa. 529, 535, 345 A.2d 645, 648 (1975), *quoting Commonwealth v. Rose,* 457 Pa. 380, 389, 321 A.2d 880, 884 (1974). In the instant case, a county criminologist testified as follows concerning the weapon which inflicted the fatal wound:

(to questioning by the prosecutor)

A. The weapon was a .38 caliber weapon and probably a Smith and Wesson weapon.

Q. Why did you say that?

A. The Smith and Wesson had five lands and grooves in the barrel, the widths of the lands and grooves on the bullet is similar to that of Smith and Wesson revolvers.

On cross-examination by defense counsel, the same witness testified as follows:

Q. In your examination or investigation of that bullet, it could sustain a finding by you of the length of the barrel of such a revolver?

A. No, sir.

Q. You don't know how long it might have been?

A. No idea.

That testimony was the only evidence even remotely relevant to the element of barrel length. The Commonwealth simply failed to meet its burden of proof as to the element of barrel length. Absent some evidence indicating barrel length, the evidence is not sufficient to support the firearms verdict.

Accordingly, the judgment of sentence entered on the firearms verdict is reversed, and appellant is discharged as to those counts.

Judgment of sentence entered on the voluntary manslaughter verdict is affirmed.

MANDERINO, J., files a concurring and dissenting opinion.

MANDERINO, Justice, concurring and dissenting.

The majority finds no merit in appellant's claim that the trial court erred when it admitted into evidence the preliminary hearing testimony of a prosecution witness who at trial invoked his privilege against self-incrimination. Ante at 532 n.2. In my view, the fact that the witness was cross-examined at the preliminary hearing does not, standing alone, justify admitting the testimony into evidence. *See, Commonwealth v. Rodgers,* 472 Pa. 435, 463–65, 372 A.2d 771, 784 (1977) (Manderino, J., dissenting); *Commonwealth v. Velasquez,* 449 Pa. 599, 605–08, 296 A.2d 768, 771–73 (1972) (Manderino, J., dissenting). For the reasons stated in my dissenting opinions in *Rodgers* and *Velasquez,* I would exclude, on the present record, this witness' testimony given at the preliminary hearing.

I agree that the judgment of sentence on the firearms conviction should be reversed and the appellant discharged as to that charge.