427 A.2d 231

**COMMONWEALTH of Pennsylvania**

v.

**Robert JENNINGS, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 14, 1980.

Filed March 20, 1981.

---

John Halley, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, JOHNSON and POPOVICH, JJ.

POPOVICH, Judge:

On January 29, 1976, a jury found the appellant guilty of Unlawfully Carrying a Firearm Without a License and Former Convict Not to Own a Firearm. A timely Motion for a New Trial and/or in Arrest of Judgment was filed and denied by the trial court. Sentencing, which was imposed on July 20, 1976, consisted of 2½ to 5 years imprisonment on the first count and a concurrent 2½ to 5 years for the remaining offense. Judgment of Sentence was appealed to this Court and we affirmed per curiam. *Commonwealth v. Jennings*, 256 Pa.Super. 528, 389 A.2d 171 (1978) (HOFFMAN, dissenting).

■ On August 13, 1979, appellant filed a Post-Conviction Hearing Act[1] (PCHA) petition. A hearing was conducted[2] and thereafter, on October 19, 1979, the petition was denied. The present appeal is from the Order denying the PCHA petition. This Court has reviewed the record and finds the ruling entered below to be correct. Therefore, we affirm the Order of the lower court.

■ The sole allegation raised by the appellant in his PCHA petition is that trial "counsel was ineffective for not raising the issue at trial [that t]he Commonwealth did not prove the barrel length of the weapon in [his] case."[3] (Appellant's PCHA petition, at 3) Before reaching the merits of the claim, we note that "counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests." (Emphasis in original) *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967). However, when confronted with a claim of ineffectiveness of counsel, this Court utilizes a two-step analysis. The Court must first determine whether the issue underlying the charge of ineffectiveness is of arguable merit. *Commonwealth v. Sherard*, 483 Pa. 183, 394 A.2d 971 (1978). If the underlying issue is found to be of arguable merit, our inquiry shifts to a determination of whether the course

1.  The Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.* (Supp. 1978–79).

2.  Inasmuch as counsel from the public defender's office of Allegheny County represented appellant at trial and on his prior appeal, it was prudent for the lower court to assign private counsel to assist appellant at the PCHA hearing, given the claim of ineffectiveness of counsel. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975). As such, the issue is properly before this Court, it being the first opportunity that said issue could have been raised. *Commonwealth v. Via*, 455 Pa. 373, 316 A.2d 895 (1974); *Commonwealth v. Lee*, 254 Pa.Super. 495, 386 A.2d 59 (1978).

3.  A review of the record discloses that the Commonwealth's witnesses (Officer Bauer and Dr. Levine) testified to no more than the caliber and serial number of the gun. (Trial Tr. pp. 108 & 170) However, this in and of itself is not dispositive of counsel's ineffectiveness. *See* discussion *infra*.

chosen by counsel had some reasonable basis aimed at promoting his client's interests. *Commonwealth v. Evans,* 489 Pa. 85, 91, 413 A.2d 1025, 1028 (1980); *Commonwealth v. Sherard, supra.*

In ascertaining if appellant's averment is of arguable merit, the Court starts by examining the relevant provisions of the Uniform Firearms Act (Act) with which the accused was convicted of violating. Section 6105 provides:

> "No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control." 18 Pa.C.S.A. § 6105.

As for Section 6106, it provides in part:

> "(a) Offense defined.—No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as provided in this subchapter." 18 Pa.C. S.A. § 6106(a).

The definitional section of the Act defines "firearm" as follows:

> "Any pistol or revolver with a barrel less than 12 inches, any shotgun with a barrel less than 24 inches, or any rifle with a barrel less than 15 inches." 18 Pa.C.S.A. § 6102.

A review of the instant facts reveals that the aforesaid elements were proved beyond a reasonable doubt. *Commonwealth v. Cropper,* 463 Pa. 529, 535, 345 A.2d 645, 648 (1975). To-wit, at trial, Pittsburgh Officers Bauer and Buettner testified to seizing a .357 Magnum Blackhawk from the appellant.[4] These same witnesses identified Common-

---

4. More particularly, at approximately 2:50 a. m. on the 8th of October, 1975, Officers Bauer and Buettner were cruising Pittsburgh's Hill District in an unmarked vehicle. The officers, while waiting for the traffic light at the intersection of Fifth and Pride Streets to change, saw appellant, Weldon Fells (a co-defendant) and five others congregating on the corner. As the police turned off Fifth and onto Pride, Officer Bauer noticed appellant lean forward and hand Fells money. This gesture caused appellant's waist-length jacket to pull up and expose "the grips of a revolver in the rear portion of his trousers" to the police. Officer Bauer reacted by alighting from the cruiser and stationing himself 50 to 75 feet away to survey the situation. Fells

wealth's Exhibit # 3 as the weapon taken from the accused. Dr. Robert Levine, the criminalist, gave testimony regarding his test-firing (operability) of the weapon. Additionally, Officer Smolensky reported that a check with the State Police in Harrisburg disclosed that no license had been issued to the appellant to carry a weapon. Lastly, an employee for the clerk of courts of Lancaster County produced records to prove that the appellant had pled guilty in this Commonwealth to a crime of violence—Robbery. Thereafter, Exhibit # 3 was offered into evidence. Appellant's counsel objected, on the grounds that a "chain of custody" had not been established. The court overruled the objection and permitted the weapon to be admitted into evidence. At the close of the Commonwealth's case, appellant's demurrer was also denied.[5] After the defense rested, the jury was charged and a side bar was held, where it was agreed by all concerned that the weapon admitted into evidence could be taken by the jurors to the deliberation room. *Commonwealth v. Hobson*, 484 Pa. 250, 398 A.2d 1364 (1979); Pa.R.Crim.P. 1114.

To reiterate, appellant contends that, inasmuch as every essential element of a crime must be proven beyond a reasonable doubt, *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *Commonwealth v. Todd*, 477 Pa. 529, 384 A.2d 1215 (1978), the prosecution's failure to establish the barrel length of the .357 Magnum through

was thereafter seen walking into the Aurora Club, which was just a short distance away. Within a matter of minutes, Fells returned and left in a vehicle with the others. The police followed the crew to the front of the Edison Hotel in Pittsburgh. The police approached the vehicle, directed the occupants out and conducted a search of their persons—a .357 Magnum Blackhawk was found on appellant, while a 9 millimeter P–38 was confiscated from Fells. The group was then transported to No. 1 Police Station, where appellant and Fells were formally charged with weapon offenses. The other five members of the group were released.

5. More particularly, counsel's demurrer centered on the assertion that the Commonwealth failed to prove: 1) appellant was not licensed to possess a firearm; 2) the weapon was operable; and 3) a chain of custody. (Trial Tr. pp. 244–47)

"oral testimony of a witness ... or by an actual measurement .... permitted the jury to speculate on" this element of the offense. (Appellant's Brief, at 6) Ergo, trial counsel's failure to raise this issue at any stage of the proceeding rendered him ineffective. The Court does not agree.

In general, a jury may act only upon evidence properly laid before it in the course of a trial. IX Wigmore on Evidence § 2570 (3d Ed. 1940); 1 Jones on Evidence § 2:8 (Gard 6th Ed. 1972); 29 Am.Jur.2d, Evidence § 21 (1967). Here, albeit no testimony was proffered by the Commonwealth as to the dimensions of the weapon, no one disputes that it was admitted into evidence and taken by the jury for examination. The Court cannot merely dismiss this fact,[6] especially when viewed in conjunction with the instructions to the veniremen by the trial court. In particular, the trial court defined "firearm," as it appears in the Uniform Firearms Act, "to include any pistol or revolver with a barrel less than twelve inches." (Trial Tr. p. 390); 18 Pa.C.S.A. § 6102. Thereafter, the court stated:

6. It would be a vain attempt, even if it were desirable, to require the jury to repudiate the evidence of their own senses. 3 Jones on Evidence § 15:24 (Gard 6th Ed. 1972). This is especially true where, as here, the question to be decided is one which does not necessitate the services of an expert to examine the item and give his opinion as to the findings. *See Commonwealth v. Evans,* 190 Pa.Super. 179, 154 A.2d 57, 95 (1959), aff'd 399 Pa. 387, 160 A.2d 407 (1960), cert. denied, 364 U.S. 899, 81 S.Ct. 233, 5 L.Ed.2d 194, reh. denied, 364 U.S. 939, 81 S.Ct. 377, 5 L.Ed.2d 371; 2 Jones on Evidence § 14:9 (Gard 6th Ed. 1972). Instantly, the evidence (.357 Magnum) presented to the finder of fact was not such that its physical characteristics were beyond the grasp of the ordinary individual. Nor was specialized training necessary to ascertain by inspection the size of the firearm. 2 Jones on Evidence § 14:47 (Gard 6th Ed. 1972). Moreover, visual inspection of the item in issue is more satisfactory than relying on the testimony of one who has seen the object, since testimonial or circumstantial evidence is always subject to questions regarding relevancy or qualifications of a witness. IV Wigmore on Evidence § 1151 (Chadbourn rev. 1972); *see also Commonwealth v. Torr,* 111 Pa.Super. 178, 169 A. 238 (1934) (where external quality or condition of a material object is in issue or relevant to the issue, the inspection of the thing is proper); cf. *Commonwealth v. Whack,* 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Washington,* 259 Pa.Super. 407, 393 A.2d 891 (1978) (finder of fact may believe all, part or none of the proffered testimony).

"[I]n order to find [appellant] guilty of the charge [of Unlawfully Carrying Firearm Without a License], it would be necessary for the Jury to be satisfied beyond a reasonable doubt that the evidence of the Commonwealth has established that the .357 Magnum Blackhawk is a firearm, *as previously defined*, in operable condition, that was carried by him concealed on or about his person, and that he did not have a license to do so. The Commonwealth must establish each of those elements of the offense to your satisfaction beyond a reasonable doubt. Otherwise, you would be obliged to find the [appellant] 'Not Guilty' of the charge....

\* \* \* \* \* \*

The [Former Convict Not to Own a Firearm] ... Indictment ... charges that [appellant] did unlawfully own, possess and have under his control a certain firearm described as the aforementioned Ruger .357 Magnum Blackhawk; and that prior to October the 8th, 1975, [appellant] was convicted of Robbery in Lancaster County, Pennsylvania. In order to find [appellant] guilty of [Former Convict Not to Own a Firearm], it would be necessary for you to be satisfied beyond a reasonable doubt that the evidence of the Commonwealth has established all of these elements: That the [appellant] is a person who has previously been convicted in Pennsylvania for a crime of violence, and that on or about October 8, 1975, he either owned or had in his possession or had under his control a firearm, *as that has been defined for you*. You must be satisfied beyond a reasonable doubt that the identity of the person said to have been convicted of the robbery in Lancaster County is the same person here on trial before you. The Commonwealth must establish each of these elements of the offense to your satisfaction beyond a reasonable doubt. Otherwise, you would be obliged to find the [appellant] 'Not Guilty.'" (Emphasis added) (Trial Tr. pp. 392–93)

The Court finds that the preceding instructions fixed in the jurors' minds the requirement that before returning a ver-

dict of guilty on either offense, they had to be satisfied, beyond a reasonable doubt, that the Commonwealth proved that the appellant was found in possession of or owned a weapon having a barrel length "less than 12 inches." The manner in which the Commonwealth can prove such element is reflected in a reading of the relevant case law. For example, in *Commonwealth v. Todd, supra,* the defendant was convicted of voluntary manslaughter and violating Sections 6105 and 6106. The victim was shot in the head with a .38 caliber gun, but, at trial, it became evident that "[n]one of the several eyewitnesses actually saw the weapon, and the authorities never recovered the weapon used by [the defendant.]" *Id.,* 477 Pa. at 532, 384 A.2d at 1217. In fact, the only evidence produced by the Commonwealth on the issue of barrel length was through its criminalist, who testified on direct examination that "[t]he weapon was a .38 caliber weapon and probably a Smith and Wesson . . . ." *Id.* This conclusion was premised on the markings left on the bullet removed from the deceased, which, in the expert's opinion, were similar to grooves that would be left on bullets fired from a Smith and Wesson .38 revolver. However, on cross-examination, the witness stated he could not, from an examination of the bullet, determine the length of the barrel of the revolver. Consequently, the *Todd* court reversed the firearm conviction and affirmed the judgment of sentence for voluntary manslaughter on the basis that the criminalist's "testimony was the only evidence even remotely relevant to the element of barrel length. The Commonwealth simply failed to meet its burden of proof as to the element of barrel length. Absent *some evidence* indicating barrel length, the evidence [was] not sufficient to support the firearms verdict." (Emphasis added) *Id.,* 477 Pa. at 533, 384 A.2d at 1218.

We reached a similar result in *Commonwealth v. Rapp,* 253 Pa.Super. 31, 384 A.2d 961 (1978). There, the defendant was charged with and convicted of violating Section 6105. The weapon, a shotgun, was never entered into evidence, nor was its length ever mentioned. The Commonwealth merely

described the weapon as a " 'twelve gauge, Ithaca pump Model 37, containing three shells.' " *Id.*, 477 Pa. at 33, 384 A.2d at 962. We reversed for the prosecution's failure to prove barrel length.

■ It cannot be gainsaid that the preceding two cases are factually distinguishable from the case *sub judice.* Here, unlike *Todd* and *Rapp*, the Commonwealth did introduce the weapon into evidence, which this Court determines is "some evidence" of barrel length. *Commonwealth v. Todd, supra.* Also, the prosecution established the operability of the weapon, the appellant's conviction of a prior crime of violence and a chain of custody linking him with the weapon. Moreover, the weapon was permitted to be taken by the jury to the deliberation room for examination, without objection. Thus, given the facts here, if "[a] reasonable fact finder may . . . infer operability [, which is also an essential element to be proven in establishing violations of Sections 6105 and 6106,] from an object which looks like, feels like, sounds like or is like, a firearm . . . without direct proof of operability," *Commonwealth v. Layton*, 452 Pa. 495, 498, 307 A.2d 843, 844 (1973), then, *a fortiori*, a jury is just as competent of determining the length of a weapon by the examination of same.[7] *Cf. Commonwealth v. Holquin*, 254 Pa.Super. 295, 385 A.2d 1346 (1978) (complainant's testimony that defendant possessed a gun allowed a reasonable inference of operability, despite lack of direct testimony on this issue); *Commonwealth v. Yaple*, 238 Pa.Super. 336, 357 A.2d 617 (1976) (same).

7. This is not to say that the Commonwealth may satisfy its burden of proof as to an element of an offense by the mere introduction of the item, object or substance into evidence, when such item, object or substance is at issue. In those instances in which the jury is incompetent, without the aid of greater skills than its own, to determine the probable existence of facts to be ascertained or the likelihood of their occurring from facts actually proved, expert testimony should be used to facilitate their understanding of the subject. *See* IV Wigmore on Evidence § 1160, at 357 (Chadbourn rev. 1972); *Commonwealth v. Oates*, 269 Pa.Super. 157, 409 A.2d 112 (1979); *Commonwealth v. Stoffan*, 228 Pa.Super. 127, 323 A.2d 318 (1974); *Commonwealth v. Evans, supra.*

Thus, based on the preceding, the Court concludes that appellant's claim lacks arguable merit.[8]  Therefore, counsel cannot be deemed ineffective for failing to raise the issue of barrel length at trial.  *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1972).  Consequently, the Order of the lower court denying appellant's PCHA petition is affirmed.

8.  Since the Court reads *Commonwealth v. Todd, supra,* to sanction the admission of the weapon itself as "some evidence" of barrel length, counsel cannot be faulted for not specifically objecting to the Commonwealth's failure to introduce oral testimony to prove such point.  *See Commonwealth v. Ford,* 491 Pa. 586, 421 A.2d 1040 (1980), (we will find a "reasonable basis" for inaction if the thing not done had no likelihood of success).  *Commonwealth v. Webb,* 491 Pa. 329, 336, 421 A.2d 161, 165 (1980).